UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| NEIL ACKERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:25-cv-04072-MMM |
| | ) | |
| LEDBETTER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

### ORDER

Plaintiff, proceeding pro se under 42 U.S.C. § 1983, presently incarcerated at Illinois River Correctional Center, pursues claims against Hill Correctional Center staff.

The case is before the Court for a merit review of Plaintiff's complaint. The Court must "screen" Plaintiff's complaint, and through such process, identify and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff was in custody at Hill Correctional Center from January 2015 through July 2024. On March 1, 2021, inmate Brown, a transgender inmate, was moved into

Plaintiff's cell. Brown had recently been moved to Plaintiff's cell from segregation after Brown was caught engaging in sexual relations with another inmate. Brown is known to steal from cellmates as well. Plaintiff asked Sergeant Humphry to move Brown away from Plaintiff's cell. Placement Officer Trembly said Brown could not be moved until March 5 due to a vaccination event. Trembly also stated that Plaintiff was a "homophobe" and that she's "got something for Ackerman," the Plaintiff.

On March 5 Plaintiff was moved to another cell. Plaintiff's assigned cellmates were thereafter extremely aggressive, combative, argumentative, and violent. In May 2024 Plaintiff learned that Trembly had falsely labeled him a "predator," which resulted in being housed with other "predators." Plaintiff is in fact extremely vulnerable, being diagnosed with Aspergers Syndrome which makes him susceptible to assault and abuse. Trembly falsely labelled Plaintiff a predator so Trembly could house violent and dangerous inmates with him to harm him.

Plaintiff alleges with some granularity the series of violent individuals he was housed with. He alleges that he notified each Defendant about the specific threats he faced. He was on at least one occasion severely abused. Defendants repeatedly told him he had to "fuck or fight," and made similar statements while refusing to address Plaintiff's housing with violent "predator" inmates.

"A prison official is liable for failing to protect an inmate from another prisoner only if the official 'knows of and disregards an excessive risk to inmate health or safety[.]'" *Gevas v. McLaughlin*, 798 F.3d 475, 480 (7th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Plaintiff's allegations state a claim against Defendants Ledbetter, Williams, Krause, Jones, Baker, Trembly, Batson, Street-Cox, and Oelburg. These allegations taken most favorably to Plaintiff raise the inference that that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety. *Gevas*, 798 F.3d at 480.

Plaintiff also states a First Amendment retaliation claim against Defendants Ledbetter and Trembly. Plaintiff alleges Ledbetter moved Plaintiff into the cell with inmate Steele, who physically attacked Plaintiff, in retaliation for a specific grievance Plaintiff wrote about another violent inmate Plaintiff was housed with. Plaintiff alleges Defendant Trembly falsely labelled Plaintiff a "predator" in retaliation for Plaintiff's legitimate complaint about being housed with Brown. *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

Finally, Plaintiff states a state-law negligence claim against Ledbetter, Williams, Baker, Jones, Krause, Batson, Street-Cox, and Oelburg, in that each of these individuals are plausibly alleged to have owed Plaintiff a duty of care, broken that duty, and as a result Plaintiff suffered injuries.

IT IS THEREFORE ORDERED:

1. Plaintiff's Motions for Status [5], [7], and [8] are MOOT.

2. Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states the claims referenced in the Written Order. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

3. This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for all Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those

    motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4. The Court will attempt service on Defendants by mailing a waiver of service. Defendants have 60 days from service to file an Answer. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

5. If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect service, to include either sending another waiver form, or at the Court's discretion, effecting formal service through the U.S. Marshals Service on Defendants, which will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

7. This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. **However, this does not apply to discovery requests and responses.** Discovery requests and responses are not filed with the Clerk. Plaintiff MUST mail discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8. Counsel for Defendants are hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the deposition.

9. Plaintiff shall immediately inform the Court, in writing, of any change in Plaintiff's mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10. Within 10 days of receiving from defense counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to defense counsel.

11. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

12. The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

Entered this 29th day of October, 2025.

*s/Michael M. Mihm*
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE